## Isaac Kuhn, Appellee, v. Samuel Eppstein et al., Appellants.

SPECIFIC PERFORMANCE—*relief accorded where property sought to be obtained pursuant to contract has been destroyed pendente lite.* In a proceeding to enforce specific performance of a contract for the sale and conveyance of improved property if the improvements upon such property have been destroyed *pendente lite*, the difference between the market value of the land immediately before the destruction of such improvements and the like value immediately thereafter should be ascertained and a corresponding abatement made in the purchase price provided for in the contract.

Bill in equity. Appeal from the Circuit Court of Champaign county; the Hon. SOLON PHILBRICK, Judge, presiding. Heard in this court at the October term, 1907. Affirmed. Opinion filed November 17, 1908.

WILLIAM E. O'NEILL and A. D. MULLIKEN, for appellants.

RAY & DOBBINS, for appellee.

MR. JUSTICE BAUME delivered the opinion of the court.

This is an original and supplemental bill in equity filed by appellee against appellant to enforce specific performance of the following contract:

"CHAMPAIGN, ILLINOIS, June 7, 1904.

"I herewith acknowledge receipt of five hundred dollars as part payment on my building, 41 Main Street, which I sell and convey to Isaac Kuhn for seventy-five hundred dollars; and I hereby agree to deliver to Isaac Kuhn, Champaign, Illinois, on or before July 1, a clear title and deed, free of any and all encumbrances whatsoever, taxes paid by me to date of delivery of abstract, on payment of balance by said Isaac Kuhn of seven thousand dollars.

SAMUEL EPPSTEIN."

At the date of the contract Samuel Eppstein was the equitable owner of the premises involved, the legal title to which was in his son, William D., and said premises were then occupied by one McDonnell as a tenant of Samuel Eppstein. Prior to July 1, 1904, William D. Eppstein executed a deed conveying said premises to appellee and the deed was sent to a bank in Champaign with instructions to deliver the same to appellee, upon the payment by him of $7,000, the balance of the purchase price. On July 1, 1904, appellee tendered to the bank the sum of $7,000 and then demanded a delivery to him of the deed and possession of the premises. The officers of the bank having no authority with reference to the delivery of the possession of the premises then occupied by McDonnell, refused the demand of appellee and he thereafter filed his bill for a specific performance of the contract, and for an abatement of the purchase price on account of damages claimed to have been sustained by reason of the failure of Samuel Eppstein to perform the contract. McDonnell remained in possession of the premises until December 22, 1904, when the building thereon was destroyed by fire, whereupon he vacated the same

and claimed no further right or interest therein. Appellee then filed his supplemental bill wherein he alleged the destruction of the building by fire, and prayed that an abatement be made from the contract price of the amount of deterioration in the value of the premises resulting from the fire. The right of appellee to the relief prayed was sustained by the Supreme Court in an opinion reported in 219 Ill. 154. The cause was then heard in the Circuit Court to determine the amount of damages to which appellee was entitled for the non-performance of the contract and the abatement to be made from the contract price by reason of the deterioration in the market value of the premises resulting from the fire. Upon such hearing a decree was entered, from which decree, appellants here prosecuted an appeal to the Supreme Court. Upon that appeal the decree of the Circuit Court was reversed and the cause remanded "with directions to the Circuit Court to hear further testimony of the parties, or either of them, as to the difference in the value of the premises, if any, resulting from the encumbrance by virtue of the lease to McDonnell and the deterioration in the market value caused by the fire," and it was there further said by the court: "If the proof shows that the market value of the premises has been diminished by one or both of these causes, the amount of such diminution is to be deducted from the $7,000 and a conveyance ordered made to appellee upon payment of the balance." Eppstein v. Kuhn, 225 Ill. 115. Upon the remandment of said cause to the Circuit Court the same was referred to a special master to take and report the proofs together with his findings thereon, and thereafter the said special master filed his report wherein he found:

"First. That while the evidence shows that the probable market value of the premises at the time of the sale to complainant Kuhn was less than if said premises had been free and clear of said lease thereon to McDonnell, still the evidence fails to show any defi-

nite amount, so that a finding of nominal damages is all that can be made on said account.

"Second. That the evidence shows that the market value of the premises in question has been damaged or deteriorated on account of the fire in question, which occurred on the 22nd day of December, 1904, to the amount of $3,918."

Objections were filed both by the appellee and the appellants to said report of the master, which objections were by him overruled, and upon said objections standing as exceptions to said report, the cause was heard by the chancellor who overruled the exceptions and entered a decree finding that the market value of the premises had been damaged in the amount of $3,918, and that said sum should be deducted from the balance of the contract price of $7,000, leaving a balance of $3,082 due the appellants. The decree further directed that upon the payment of said sum of $3,082 by appellee to appellants, or to the clerk of the court for said appellants, that the bank deliver to appellee the deed for the premises in controversy; that upon the failure or refusal of the bank so to do, the special master execute the decree by conveying the said premises to said appellee.

It is insisted on behalf of appellants that the decree is predicated upon the admission and consideration by the chancellor of incompetent and improper evidence as to the damage resulting from the destruction by fire of the building upon the premises; that the destruction of the building by fire resulted in a permanent injury to the premises and that in such case the true measure of damages is the difference between the market value of the land immediately before the fire occurred and the like value immediately after the fire.

The evidence discloses that the building upon the premises was not merely damaged or rendered less capable of use for the purpose for which it was intended and used, but was practically wholly destroyed by fire. In such case the injury to the premises may

properly be held to be permanent in character and the measure of damages as contended for by appellants, should be applied. The case of Fitz Simons v. Braun, 199 Ill. 390, relied upon by appellee as announcing a different rule, is to be distinguished from the case at bar. The Fitz Simons case was an action to recover damages for an injury to a building caused by the use of dynamite in excavating a tunnel, where the evidence tended to show that the injury to the building was of such a character that it could be precisely remedied by repairs, and where no interest or right in the land apart from the building was involved, and it was held that the cost of repairing the building and restoring it to its proper condition was the true measure of the damages.

In Lombard v. Chicago Sinai Congregation, 64 Ill. 477, Lombard filed a bill to enforce the specific performance of a contract to convey to him certain premises including a church edifice, and before the contract was executed the building was destroyed by fire. It was held that Lombard was entitled to maintain his bill and to obtain so much of the property agreed to be sold as he could get and compensation to be deducted from the purchase money for the portion of the property destroyed, pending the option of the vendors. The compensation here mentioned we take to mean the amount required to make the vendee whole; that is, to give to him the equivalent of what he lost by the failure of the vendor to convey the premises contracted to be conveyed. And where, as in the case at bar, the premises contracted to be conveyed are permanently injured or are impossible of restoration, the compensation to be awarded to the complainant vendee is the difference between the market value of the property in its condition immediately before the injury and the like value immediately after the injury.

Appellants assume a somewhat anomalous position in this case. Notwithstanding their contention that evidence as to the cost of the restoration of the building

upon the premises, or rather the cost of the construction of a new building similar in design to the one destroyed by fire, was improperly admitted and considered by the court, the record discloses that the only evidence introduced on behalf of appellants except the testimony of the witness Hefferman, was evidence of that character.   Charles M. Ford and George S. Meades, two building contractors, called as witnesses on behalf of appellants, testified that they would be willing to put the building in its former condition for $2,100 and $2,140 respectively.   Hefferman, the other witness called on behalf of appellants, did not assume to state his opinion as to the value of the premises before the fire, but merely testified that the property in its then condition was worth between $6,000 and $6,500 and that he would then give for it $6,500 in cash.   The witness testified in February, 1907, or thereafter, and the valuations fixed by him were as of the date when he testified.   It is obvious, therefore, that his testimony did not shed any light upon the real question at issue, which was the value of the property at the date of the contract, July 1, 1904.   That appellants have shifted their position with reference to the competency of evidence tending to show the cost of replacing the building upon the premises, as a proper element to be considered in determining the amount of damages to be awarded appellee, is apparent also from the fact that they interposed no objection to evidence of that character given by the witnesses Charles C. Glenn, J. H. Vredenburg, Frank H. Jahr and B. F. Miller, called upon behalf of appellee.

Appellee, however, offered competent evidence to determine the amount of damages under the correct rule.   The uncontradicted evidence tends to show that the lot without the building was worth on July 1, 1904, from $3,000 to $3,500.   F. H. Jahr testified that the improvements on the lot were worth $5,000 prior to the fire.   Seeley Brown testified that the building without regard to the lot was worth probably from $3,500 to

$4,000 at the time of the fire. Charles J. Mulliken testified that the building without reference to the lot was worth about $4,000 at the time of the fire; and that the building and lot free and clear of encumbrances was worth about $7,000 on July 1, 1904. Robert C. Wagner testified that the property on July 1, 1904, prior to the fire was worth about $7,000. E. A. Gardner testified that the building was worth about $4,000 just prior to the fire. John B. Weeks testified that the building was worth about $5,000 just prior to the fire. J. F. Hessel testified that the building was worth at least $4,900 at the time of the fire. H. T. Sperry testified that the value of the building prior to the fire was about $4,500. There is ample competent evidence in the case to determine the amount of damages which appellee is entitled to recover measuring the same by the true rule, and we are of opinion that the finding of the master approved by the chancellor, fixing the amount of such damages at $3,918, is approximately correct and should be sustained. The evidence tends to show that there was a marked advance in the market value of business property in the city of Champaign following July 1, 1904, and in view of the fact that much of the evidence as to the value of the building prior to the fire related to the 22nd of December, 1904, when the fire occurred, it is probable that such advance in the market value of property following July 1, 1904, influenced the witnesses to fix the value of the building immediately before the fire at a greater amount than the building was actually worth on July 1, 1904.

Appellee has assigned cross errors on the finding of the master approved by the chancellor that the evidence fails to show any definite amount of damage sustained by appellee by reason of the fact that the premises involved were subject to an encumbrance thereon of a lease to McDonnell, and that appellee was entitled to no more than nominal damages on that account, and also upon the finding that appellee was

only entitled to $3,918 as damages for deterioration in the market value of the premises caused by the fire. Appellee insists that the evidence in the record is ample to sustain a finding that damages amounting to at least $500 were sustained by him because of the leasehold encumbrance. Aside from the testimony of appellee that he gave at least $1,000 or $1,200 more for the property than he would have given if there had not been a lease on it, there is no evidence in the record to sustain the claim of appellee for damages upon that account. Such testimony was wholly insufficient to justify a finding in favor of appellee of any depreciation in the market value of the premises occasioned by the leasehold encumbrance. Appellee was only entitled to recover the damages to the market value of the premises occasioned by said encumbrance, and any personal considerations which may have moved him to pay more for the property without such encumbrance manifestly constituted no proper basis upon which to determine the depreciation, if any, in the market value of the premises occasioned by such encumbrance.

Upon a consideration of the whole record we are not persuaded that the decree is erroneous and it will, therefore, be affirmed.

*Affirmed.*