## Susie McDonell, Appellee, v. Lake Erie & Western Railway Company, Appellant.

### Gen. No. 6,451.

1. RAILROADS, § 733*—*when evidence shows negligence in setting fire obscuring view of train by one approaching crossing.* Evidence *held* to warrant a finding that defendant's servants set fire to grass and weeds near defendant's railway and that the smoke therefrom obscured the view of an oncoming train by a person approaching the crossing where plaintiff was injured, in an action to recover damages for injuries from being struck by defendant's train.

2. RAILROADS, § 735*—*when evidence shows negligence in not giving signals on approach to crossing.* Evidence *held* sufficient to warrant a finding that defendant was negligent in not giving the statutory signals in the approach of its train to the crossing in question where plaintiff, the driver of an automobile, was injured, in an action to recover damages for injuries from being struck by defendant's train.

3. RAILROADS, § 738*—*when evidence shows driver of automobile injured at crossing was not guilty of contributory negligence.* Evidence *held* sufficient to warrant the finding that plaintiff, the driver of an automobile, was not contributorily negligent in approaching the crossing where she was injured by being struck by defendant's train, in an action to recover damages for such injuries.

4. EVIDENCE, § 410*—*when testimony of physician as to result of examination of injured person is proper.* Testimony by a physician who had examined plaintiff, in reply to a question as to her physical condition upon his examination, that he found her suffering from nervous shock was proper.

5. EVIDENCE, § 365*—*what is proper testimony by nonexpert witness.* A nonexpert witness may testify to such indications as are evident to common observation, as that plaintiff was very nervous.

6. AUTOMOBILES AND GARAGES, § 6*—*when verdict not excessive for injuries to person and to automobile.* A judgment for $1,400 *held* not excessive for injuries to plaintiff and to her automobile, where her injuries were serious and permanent and the automobile, valued at $300 before the accident, was practically worthless thereafter.

7. RAILROADS, § 766*—*when instructions in action by driver of automobile for personal injuries are not misleading.* Instructions reviewed and *held* that the jury could not have been misled there-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

from into believing from them that no care was required of plaintiff except while she was upon the railroad track, in an action to recover damages for injuries from being struck by defendant's train while plaintiff was driving her automobile over a crossing of defendant's tracks.

8. DAMAGES, § 207*—*when instruction on determination of is not erroneous.* An instruction that to enable the jury to estimate the amount of damages to the plaintiff for injury to her person, if any, it is not necessary that a witness should express an opinion as to the amount of the damage, *held* to be proper in an action to recover damages for personal injuries.

9. AUTOMOBILES AND GARAGES, § 6*—*when instruction on measure of damages for negligent injury to automobile is correct.* An instruction that the rule of damages for injuries to personal property from a defendant's negligence is the difference between its fair cash market value before it was injured and its fair cash market value after it was injured, *held* to be proper, where the declaration alleged total destruction of an automobile, and the evidence showed its value before being injured was $300 and after being injured, $25, and that it was practically a wreck, requiring rebuilding instead of repairing to restore its usefulness.

Appeal from the Circuit Court of Peoria county; the Hon. JOHN M. NIEHAUS, Judge, presiding. Heard in this court at the April term, 1917. Affirmed. Opinion filed August 7, 1917.

STEVENS, MILLER & ELLIOTT, for appellant; JOHN B. COCKRUM, of counsel.

CLARENCE W. HEYL and HARRY C. HEYL, for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

Susie McDonell, a teacher, was driving from her home to her school in an automobile known as a Saxon runabout, and while driving in a southerly direction upon a public highway and crossing the line of the Lake Erie & Western Railway at a place known as Burrough's Crossing, her automobile was struck by a freight train consisting of an engine, caboose and 6 freight cars running east on said railroad, and she and

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

her automobile were injured. She brought this suit against the company operating said road to recover damages for said injuries. There was a jury trial, a verdict and a judgment for $1,400, from which defendant below appeals. Each count alleged that plaintiff was exercising due care, and that the automobile was destroyed. The first count of the declaration charged the defendant with improperly driving and managing said locomotive and train; the second charged a failure to give the statutory signals; the third alleged that defendant permitted dry grass and dead vegetation on the right of way on both sides of the tracks near said crossing to burn and to cause great clouds of smoke to arise at or near said crossing on both sides of the right of way, and to extend in both directions from the crossing, and to thereby obstruct the view of the railroad and track in either direction, and to obstruct the view of persons approaching said crossing; and that defendant negligently and recklessly drove said locomotive and train upon said crossing without warning. Each count averred the injuries to the plaintiff and to her car.

Appellant contends that the proof does not show that its servants were negligent. That there was much smoke at that crossing is clear from the evidence, and also that this smoke came from the burning of dead grass and dry weeds on the south side of the railway. It was a disputed question of fact whether defendant's servants set these fires, and whether the smoke was sufficient upon the crossing to obstruct the view of approaching trains, but we are of opinion that the jury were warranted in finding from a preponderance of the evidence that the defendant's servants did set the fire and that the smoke did obscure the view of a train approaching from the west, by a person crossing the railway from the north. There was testimony by several witnesses that no signal was heard from the

advancing train. There was other proof that a signal was given by a whistle, or 4 whistles, 80 rods from the crossing. It is not contended that the whistling was continued from that place until the crossing was reached. It is contended by defendant that an automatic bell was rung the entire time while the engine was approaching the crossing from 80 rods away. This was denied by several witnesses for the plaintiff. We conclude from the evidence that the jury were warranted in finding that the bell was not rung while said train was traveling from the whistling post to the crossing. Therefore the jury were warranted in finding that the defendant was negligent in not giving the statutory signals.

It is contended that appellee was guilty of contributory negligence in driving upon the crossing. As she approached the crossing there were numerous obstacles to her view to the west, such as buildings and shrubbery, but when she had passed those the proof was clear that she stopped from 50 to 75 feet from the crossing and looked both ways and listened, and she testified that she did not hear any signal or see any sign of an approaching train, and that she then drove on. Certain section men standing south of the crossing testified that they signaled her to stop. She testified that she saw those men, but they gave her no signal. If the jury believed her, she was not guilty of any negligence. The smoke did not interfere with her hearing an engine bell or whistle, nor necessarily charge her with negligence (*Chicago & N. W. Ry. Co. v. Hansen*, 166 Ill. 623), and she had a right to assume that if a train were approaching, defendant's servants in charge thereof would give the statutory signals. *Rosenthal v. Chicago & A. R. Co.*, 255 Ill. 552, and cases there cited. We think it unnecessary to burden this opinion with a recital of the testimony of the different witnesses bearing on the question of defendant's negligence and plaintiff's exercise of due care.

A physician who examined plaintiff was asked as to her physical condition upon his examination, and he stated that he found her suffering from nervous shock. We are of opinion that this was proper testimony to be given by a physician qualified as an expert. A non-expert witness was permitted to testify that plaintiff after the accident was very nervous. We see no impropriety in permitting that testimony to go to the jury. A nonexpert witness may testify to such indications as are evident to common observation (Jones on Evidence, 2nd Ed., sec. 366). Besides, the fact was also proved by a physician, and it was not disputed.

It is urged that the damages are excessive. The question of the damages to the automobile will be discussed in another connection. We are of opinion that the sum awarded plaintiff for her personal injuries was moderate. They were serious, and a medical man testified that in his opinion they were permanent.

It is urged that the court erred in its action upon several instructions. Plaintiff's instruction No. 2 refers the jury to the negligence charged in the declaration, and it is urged that this is improper, and that the court should not have referred the jury to the declaration, but should have instructed what the issues found therein were. Assuming that this criticism at some times would be valid, defendant asked and obtained from the court similar instructions. Defendant's first given instruction told the jury that the plaintiff must prove that the defendant was negligent as charged in some one or more counts of her declaration, and by the defendant's ninth instruction they were told that even though they believed defendant was guilty of negligence as charged in some one or more counts of plaintiff's declaration, yet under certain other circumstances there could be no recovery; and to the same effect is the defendant's first modified instruction.

It is urged that the declaration confined plaintiff's

due care to the instant when she was upon the cross-
ing, and that therefore the instruction referring to
the declaration was erroneous under *Krieger v. Au-
rora, E. & C. R. Co.,* 242 Ill. 544. In that case the
averment was, "while the said plaintiff with all due
care and caution was then riding across the said rail-
road"; and the instruction was that if the plaintiff
had proven his case as laid in the declaration they
should find for the plaintiff. That case cites many
authorities on the question of referring the jury to
the declaration, some approving and others disapprov-
ing of the practice according to the circumstances of
the particular case. The first count here contained
the following concerning the plaintiff's care: "While
the plaintiff, with all due care and caution for her
own safety, was then and there riding in said auto-
mobile across the said railroad tracks at said crossing
as aforesaid upon the said public highway." The sec-
ond count said: "The said plaintiff was then with
all due care and diligence for her own safety driving
upon said public highway at the said crossing." The
third count said: "The plaintiff was then with all
due care and caution for her own safety driving upon
the said public highway at the said crossing as
aforesaid." The instructions are to be considered as a
series. The second count required the plaintiff to
prove "that the plaintiff was at and immediately prior
to the time and at the place in question in the exercise
of due care and caution for her own safety and the
safety of her automobile." The fourth instruction
for plaintiff required of the plaintiff "such a degree
of care and caution before and at the time of the
accident in question under the circumstances and in
the situation in which plaintiff was placed, so far as
the same may be shown by the evidence, as an ordi-
narily careful and prudent person would exercise un-
der like circumstances." Defendant's first given in-
struction required proof by plaintiff that she was in

the exercise of due care and caution for her own safety. The second required proof by plaintiff that she was in the exercise of due care and caution for her own safety at and immediately prior to the time of the accident. The fifth told the jury that there was no presumption that the plaintiff was in the exercise of due care and caution for her own safety at and immediately prior to the time of the accident, but that the burden of proof on that question was on the plaintiff, and if she failed to so prove, she could not recover. The sixth submitted to the jury the question whether plaintiff in approaching or driving on the crossing in question was in the exercise of due care, and whether her want of due care contributed to the injury. The seventh told the jury that a person approaching a railroad crossing was bound to know it was a place of danger, and that it was the duty of a traveler upon a highway approaching a railroad crossing to exercise due care and caution in approaching and crossing the same, and that if plaintiff did not exercise that care and caution and she was injured thereby or contributed to the injury of herself or damage to her automobile, she could not recover. The eighth told the jury that if the plaintiff by the exercise of due care for her own safety would have seen the train approaching the crossing and failed to exercise such care in approaching and driving on the crossing, and thereby contributed to her injury, she could not recover. The ninth referred to the care required of her in approaching and driving on the crossing. The twelfth related to the duty of a person traveling on the highway as he approached a railroad crossing. We think it obvious that the jury could not have been misled into believing from the instructions that no care was required of plaintiff except while she was on the railroad track. Plaintiff's given instruction No. 6 is criticised because it tells the jury that it is not necessary for a witness to express an opinion as to the amount of plaintiff's damages, and it is said this is not true as to her doctor's

bills, which must be proved by positive testimony. They were so proved in this case, but also the instruction is not worded exactly as the argument assumes. It tells the jury that "to enable the jury to estimate the amount of damages to the plaintiff for injury to her person, if any," it is not necessary that the witness should express an opinion as to the amount of the damage, and this is well-settled law.

It is argued that modified instruction No. 4 for the defendant was so worded as to cause the jury to understand that in order to give the statutory signals the whistle must be sounded all the way from the whistling post, 80 rods distant, to the crossing, or that a bell of the required weight must be rung while the train is traveling that entire distance; whereas, the blowing of a whistle part of the way and the ringing of the bell the rest of the way would be a compliance with the statute. Possibly the modification was not as cautiously made as it might have been, but we are of opinion that this is too fine a distinction to have affected the jury in this case. There was nothing in the evidence from which the jury could reasonably find that the bell was rung a part of the way and the whistle was blown for another part. Obviously, from the evidence, if the whistle was blown at all, it was blown only at the whistling post, 80 rods distant from the crossing. Defendant sought to prove that the automatic bell was rung continuously the whole distance, and plaintiff's evidence tended to show that it was not rung at all, and there was no claim by any one that the bell was rung a part only of that distance.

The seventh instruction given at the request of plaintiff stated the rule of damages as to the automobile, if the plaintiff recovered, as the difference between its fair cash market value before it was injured and its fair cash market value after it was injured. Defendant argues that this was erroneous, and that the true measure of damages is the cost of the necessary repairs.

This presents the question, What is the measure of damages recoverable by a plaintiff whose personal property has been injured by the negligence of the defendant, but not destroyed, and which can be and has been repaired? The textbooks state it as the general rule that the measure is the difference between the value of the property immediately before and immediately after the injury alleged, as stated in 13 Cyc. 149, and 8 Ruling Case Law 487, in which works cases are cited in support of that rule. It is, however, stated in each of them, with citation of authorities, that in some jurisdictions the rule of restoration is sanctioned by the courts. In this State the latter rule has been followed in numerous instances. In *Travis v. Pierson,* 43 Ill. App. 579 (1st Dist.), the rule is stated to be the reasonable cost of what is necessary to repair the damage done, and a reasonable sum for the loss of the use of the property while the plaintiff is necessarily deprived of its use. To the same effect is *City of Chicago v. Rust,* 117 Ill. App. 427 (1st Dist.). In *Peabody v. Lynch,* 184 Ill. App. 78 (1st Dist.), the reasonable cost of the repairs was held to be the true measure of damages. In *Lawndale Steam Dye Works v. Chicago Daily News Co.,* 189 Ill. App. 565 (1st Dist.), the true measure of damages was held to be the cost of the necessary repairs and the reasonable value of the loss of the use while the machine was being repaired. In *Berry v. Campbell,* 118 Ill. App. 646 (2nd Dist.), it was held that the correct measure of damages in such cases is the cost of making the repairs and the value of the use while the owner is necessarily deprived of it while it is undergoing repairs. In *Crossen v. Chicago & J. Elec. Ry. Co.,* 158 Ill. App. 42 (2nd Dist.), the same rule of damages is laid down where the property can be repaired, and it is held that if the property cannot be repaired, the true measure is the difference between the market value of the property before the injury and the value of the wreckage; and that the

loss of profits in conducting a business involving the labor of others is not recoverable. In *Latham v. Cleveland, C., C. & St. L. Ry. Co.,* 164 Ill. App. 559 (2nd Dist.), the same rule was stated where the property is capable of repair, and the same rule as above where it is incapable of repair; and that in the latter case the plaintiff is not entitled to the loss of the use. To the same effect is *Cooper v. Kankakee Elec. Light Co.,* 164 Ill. App. 581 (2nd Dist.). In *Kuhn v. Eppstein,* 145 Ill. App. 536 (3rd Dist.), the rule was recognized that if the injury to a building there complained of could be precisely remedied by repairs, the cost of repairing it and of restoring it to its proper condition was the true measure of the damages; but it was held that in that case the premises were permanently injured and impossible of restoration, and that therefore the true measure of the damages was the difference between the market value of the property in its condition immediately before and immediately after the injury. This rule of the cost of the repairs was followed and applied in *Donk Bros. Coal & Coke Co. v. Slata,* 133 Ill. App. 280 (4th Dist.). In *Donk Bros. Coal & Coke Co. v. Novero,* 135 Ill. App. 633 (4th Dist.), a suit for injury to land and buildings, the trial court held as the rule of damages the difference between the market value of the property before and after it was injured. The Appellate Court held that as a fair measure of that depreciation would be the necessary cost of repairing the buildings and restoring them to their original condition, and as the damages awarded were within the estimate of the witnesses who testified on that subject, the judgment was affirmed. These decisions are largely based on *Fitz Simons & Connell Co. v. Braun & Fitts,* 199 Ill. 390, where, in the case of injury to a building damaged by an explosion of dynamite, it was denied that the proper measure of damages was the depreciation in value of the property caused by the injuries, but it was held

that the cost of repairing the building and restoring it to its former condition was the true measure of damages. This was followed by *City of Chicago v. Murdock*, 212 Ill. 9, where the plaintiff's building was injured by the negligence of a contractor, for whose negligence the city was responsible. The trial court instructed the jury that the proper measure of damages was the reasonable cost of repairs necessary to place the building in the condition it was in before the injury. It was held that this instruction correctly announced the law.

The difficulty presented by the instruction now under consideration arises from the fact that in the case of *Peck v. Chicago Rys. Co.*, 270 Ill. 34, the *Fitz Simons* case, in 199 Ill. 390, is practically overruled, and the true measure of damages is declared to be the difference in the value of the property before and after the injury, although it is said that the loss of rental value and the cost of restoration are proper to be given in evidence as showing the damages. It seems to us, however, that there is a distinction between the class of cases decided in the several Appellate Courts above cited and the *Peck* case, *supra,* and the cases therein referred to by the Supreme Court. The *Peck* case related to a public improvement which was being constructed by the railways company under the authority of an ordinance of the City of Chicago, and there was no claim that there was any negligence which caused the injury, and the case was governed in principle by the rule prevailing in the condemnation ·of property for the benefit of a municipality. The *Fitz Simons* case, *supra,* was of the same general character. In the *Peck* case the fact was emphasized that this was the making of a public improvement where there was no want of skill or unreasonable delay and the action of the City and appellant was not wrongful or illegal. The cases that are cited in that case are almost all of them cases of injury to real estate by the making of

public improvements by a municipality where no negligence or improper work was alleged, and reference is there made to the cases cited in *Beidler v. Sanitary District of Chicago,* 211 Ill. 628.   An examination of the cases cited in the *Beidler* case on this subject of the measure of damages will show that they are all of them either cases of injury to property by a public improvement by or for a municipality, or they are cases where a railway company has injured property which it has not taken in the exercise of the right of eminent domain, or in doing that which it would have been permitted to do by virtue of a condemnation proceeding.   We conceive that there is a marked difference between an injury by one individual to the personal property of another by negligence, and an injury to property by a municipality while making a public improvement.   In the latter class of cases there may be many things which do injure the owner of the property but which he is not permitted to recover for because it is of a kind that is suffered by all or many property owners in the vicinity similarly affected; or they are of such a character that they are of that class of damages for which the owner is not given the right of recovery.   Where the matter is between individuals and grows out of negligence of the defendant, it is an invariable rule, we think, that the plaintiff shall receive actual compensation for all the injury he has suffered by the negligence of the defendant.   Where the damages are fixed by the difference between the value of the property before and after the injury was inflicted, the depreciation in value must always be a mere matter of opinion, and opinion upon a subject where different witnesses must vary extremely in their views.   There will be a tendency by the witnesses on one side to regard the property injured as having been worth but little before it was damaged, and by witnesses on the other side to consider that it was worth but very little after the accident.   One set of opinions

will be that an automobile, for example, which has been in active use for 3 or 4 years is valuable because it can still render good service, while experts will value it lightly because important new inventions have been added since it was made, and a person buying in the market will pay little for an old fashioned car. One side will see value in the injured part if it can be successfully repaired. The other side will see only a junk pile worth almost nothing. Where the repairs are honestly made and made only to remedy the damage done, the cost of these repairs seems to us more likely to show what the real injury had been than to leave it to mere opinion. The cost of the repairs is an actual test, and if the property is as valuable after the repairs have been made as before the injury was inflicted, then they are a complete test of the injury which has been suffered. Sometimes, after the repairs, the property is still not as good as it was before, and then the difference between the value of the property after it has been repaired and the value of the property before the injury should be added to make up the loss. There is one other element recognized in some of the cases above cited, and that is the loss of the use.

As we have shown, each of the Appellate Courts of this State has held that the cost of the necessary repairs to personal property which has been injured by the negligence of a defendant, but can be restored to its former condition for less than the value of the property before it was injured, is the true measure of damages. We have several like cases before us at this term where that rule has been applied by the trial courts. It would work great confusion to now change it. If the Supreme Court intended by its decision in the *Peck* case to fix the rule as to personal property damaged by the negligence of a defendant, it is our duty and pleasure to apply it. But the later case of *Highways Com'rs Town of Burgess v. Hohmeyer*, 279 Ill. 66, shows that even in a condemnation case the

true measure of damages is sometimes the cost and not the difference in value before and after. We conclude that in the *Peck* case the court was discussing a different question, as above indicated. We are strengthened in that view by what has been said upon this subject in other jurisdictions.

In *Williamson v. Barrett,* 13 How. (U. S.) 101, the United States Supreme Court in a case of collision between two vessels at sea, held that the repairs were a part of the proper measure of damages, and also the loss of the use of the vessel while it was undergoing repairs. This latter question is much discussed, both in the original opinion and in a dissenting opinion by three of the nine justices. In *The Granite State,* 3 Wall. (U. S.) 310, it was held in a case of collision that where the injured vessel was not a total loss and was capable of being repaired and restored to her original situation, the cost necessary to such repair was not an incorrect rule of damages. In *The Atlas,* 93 U. S. 302, it was held that where repairs are practicable, the damages against the wrongdoer should be sufficient to restore the injured vessel to the condition in which she was at the time the injury was inflicted, citing several authorities.

In *Wright v. Mulvaney,* 9 L. R. A. 807 [78 Wis. 89], an action to recover damages alleged to have resulted from defendant's vessel negligently running through plaintiff's fish net, it was held as stated in the sixth syllabus: "The measure of damages in an action against a ship owner to recover damages for his running his vessel upon and partially destroying a fishing net, is the cost of repairing the net and the value of the labor required to reset it, together with the value of its use during the time it is necessarily idle," prospective profits being excluded. In *Hartshorn v. Chaddock,* 135 N. Y. 116, 17 L. R. A. 426, a suit to recover for a wrongful obstruction by defendant of a watercourse, by which plaintiff's land was flooded and

personal property thereon destroyed, the court, in discussing the measure of damages, said: "Had the defendant broken a window of the plaintiff's house, there is no doubt that the cost of completely repairing it would be the measure of damages. There are many cases of injury to real estate where the cost of repairing the injury may be the proper measure of damages. The owner is not in every case of injury to the soil, the trees or the fixtures driven to proof of the diminution in value of the estate by reason of the injury, in order to establish his damages. The rule seems to be that when the reasonable cost of repairing the injury, or, in this case, the cost of restoring the land to its former condition, is less than what is shown to be the diminution in the market value of the whole property by reason of the injury, such cost of restoration is the proper measure of damages." The court proceeded to state circumstances under which the diminution in value of the freehold would be the legal measure of damages, and that in many cases the rule most favorable to the defendant should be adopted. In the course of the discussion the court suggested that if the defendant had removed one yard only of land from the premises, it would be absurd to say that the diminution in value of the premises would be the measure of damages. In *Anderson v. Miller,* 96 Tenn. 35, 31 L. R. A. 604, the court held that the measure of damages for partial destruction of a building was the reasonable cost of restoring it so that it would be as valuable as before. In *West v. Martin,* 51 Wash. 85, 21 L. R. A. (N. S.) 324, an action to recover damages sustained by plaintiff because of a collision between defendant's steamer and plaintiff's bridge, the court held that the measure of damages for injury to a portion of the bridge was the cost of repairing it. The court held that to attempt to fix damages at the difference between the market values of the bridge before and after the injury would entail much uncertainty, and that it was

not an article that could be readily procured in the market.

*Whipple v. Wanskuck Co.*, 12 R. I. 321, was trespass for the destruction of a mill dam by the negligence of the defendant. It was held that the measure of damages was the cost of the restoration of the dam and the loss of the use of the dam and privilege, limited, however, to the time when the dam might with reasonable diligence have been rebuilt. In *Marvin v. Pardee*, 64 Barb. (N. Y.) 353, where plaintiff sought to recover damages for tearing down and removing his fences in the front of his lot, it was held that plaintiff was entitled to recover such sum as would, when properly expended, restore the premises to their condition before the interference therewith by defendant. In *Berg v. Parsons*, 90 Hun (N. Y.) 267, plaintiff sought to recover damages claimed to have been sustained by reason of negligent blasting done in blasting out a cellar upon premises adjacent to plaintiff. There was evidence of the amount which plaintiff paid in repairing the premises after the injury, and it was conceded that this was a reasonable and fair sum for such repairs, but it was claimed that such expenditure was not the true measure of damages. The court said that the ordinary rule was the difference between the value of the premises before and after the injury; yet defendant had suffered no injury by reason of the rule adopted in this case. In *Robb v. Carnegie Bros. & Co.*, 145 Pa. St. 324, and in *Lentz v. Carnegie Bros. & Co.*, 145 Pa. St. 612, it was held that the mode of estimating damages properly applicable to a case under the power of eminent domain is not ordinarily applicable to actions of trespass. In the latter case the court permitted proof of the value of the premises before and after the infliction of the injury, and this was held erroneous in that case. The court said that where nothing was taken, but an injury was inflicted, the question was what would be the cost of restoring

the thing injured to its former condition, and if the cost of restoration would equal or exceed the value of the thing injured, then its value becomes the measure of the plaintiff's damages. *Zellmer v. McTaigue,* 170 Iowa 534, was an action to recover damages to horse and wagon and harness due to the negligence of the defendant in carelessly driving his automobile so as to frighten the horse, who ran away. As to the injury to plaintiff's wagon and harness, it was held that the measure of damages was the reasonable and proper charges for such repairs as were necessitated by reason of the injury to the property. In *Harrison v. Kiser,* 79 Ga. 588, suit was brought by the owner of a frame building for negligently making an excavation on property adjoining his and undermining his wall. The trial court charged that the measure of damages was the difference between the value of the property before and after the injury. It was held that the plaintiff, if entitled to recover, was entitled to recover whatever sum it would take to put the house in the condition it was before it was injured. In *Waters v. Greenleaf-Johnson Lumber Co.,* 115 N. C. 648, it was claimed that the defendant had without authority cut timber off of plaintiff's land, and had also negligently destroyed fences of plaintiff and filled up plaintiff's ditches. It was held that as to the injury for unlawfully cutting the timber plaintiff could recover any reduction in the value of the land, and that for the unlawful obstruction of ditches he was entitled to recover the cost of removing the obstruction, and for destroying fences, the cost of replacing them. In *Louisville & N. R. Co. v. Home Ins. Co. of New York,* 146 Ky. 281, the suit pertained in part to a house destroyed by fire. The trial court admitted evidence of what it would cost to build a house like the one burned, and excluded evidence of the market value of the house at the time it was destroyed. It was held plaintiff was entitled to recover the loss sustained by

the destruction of his house, and that it was proper to allow him to prove what it would cost to replace the house that was destroyed, and also to prove the value of the land where the house stood before it was destroyed, and its value afterwards, and that the trial court did not err; and the court cited a former case in the same court concerning the destruction of a house by fire where it was said the right of the owner as against any one tortiously destroying her house was to have her condition restored by giving her such a sum of money as would replace the destroyed tenement. In *Jackel v. Reiman*, 78 Tex. 588, where a fence of the plaintiff was torn down and the material removed, the court charged the jury that under certain circumstances they would find for the plaintiff in such sum as it would cost to replace the fence of like material and in the same manner as it was before it was torn down. This charge was approved. In *Layton v. Sarpy County*, 83 Neb. 628, a bridge for which defendant was responsible broke down and a traction engine owned by plaintiff and being driven over said bridge was precipitated into the bed of the stream and some of its parts broken and the suit was for that damage. On the trial the plaintiff was permitted to prove the cost of restoring the injured parts of the engine to their original condition so as to make it serviceable substantially as before the accident, and was not required to show the extent of the diminution in value of the property injured. It was held that if the property had been destroyed or so nearly so as to render its repair to the extent of restoring it to the use to which it was originally designed impossible or even unreasonable, the rule requiring proof of diminution of the value of the property would have been correct, but that this rule is not exclusive and is not proper under some circumstances. And it was held that the court did not err in admitting the testimony as to the cost of the restoration. *McClure v. City of*

*Broken Bow,* 81 Neb. 384, was there cited as holding that it is permissible in such a case to prove the fair and reasonable cost of restoring the property to the same condition as it was in before the injury. In *Harvey v. Sides Silver Min. Co.,* 1 Nev. 539, it was held that where the cost of repair does not exceed the value of the property such cost will usually be the measure of damages, but if the cost of restoring the property will exceed its actual value, then the value of the property and not the cost of removing the injury is the proper measure of damages for a wrongful injury. In *Koch v. Sackman-Phillips Inv. Co.,* 9 Wash. 405, in an action for injury to plaintiff's real estate by the wrongful act of the defendants, it was held that the general rule for damages to land, where the premises are considered as land only, is the difference in the values of the same immediately before and after the injury was done, but where the injury is slight and the cost of repair is less than the decrease in the permanent value, the cost of restoration is adopted; and that in that case, as a considerable part of the damages grew out of the destruction of fences, walks, outhouses, trees and shrubbery, the bare difference in the market value might not constitute a just measure of damages, and that it was proper in that case to charge that the amount of the recovery would be such a sum as would put the premises in as good condition as they were before the injury. In *Weleetka Light & Power Co. v. Northrop,* 42 Okla. 561, plaintiff owned and operated a telephone plant and defendant owned and operated a plant for the electric lighting in the town. Defendant's wires, carrying a higher current of electricity than those of plaintiff, negligently came in contact with plaintiff's wires and destroyed various telephones, boxes, wires, bells, etc. It was held that the case was properly tried upon the theory that plaintiff's measure of damages was the cost of making repairs and the value of the use of her property while

she was necessarily deprived thereof pending repairs.

These authorities from other States have been hastily examined and only briefly summarized, and there may be language in some of them not entirely in harmony with the rule for repairs. There are cases in several other jurisdictions which are cited as holding in conformity with the tenor of the above cases and which we have not had an opportunity to examine. It is therefore clear that there is much support outside of Illinois for the rule that the true measure of damages for injuries to personal property by the negligence or wrongful act of a defendant is the reasonable cost of the necessary repairs where the property is capable of being repaired to the advantage of the defendant. We are therefore of opinion that the question whether the court erred in giving said seventh instruction depends upon the condition in which this automobile was left by the accident. The declaration alleged in each count that it was destroyed. Proof by a man skilled in the business was that it was worth $300 before the accident and about $25 after the accident; and the description by that witness of the condition of the various parts of the car after the accident tends strongly to show that it was practically a wreck, and that it would have had to be rebuilt instead of repaired to restore its usefulness. Defendant could have introduced proof to show that it was capable of being repaired and restored to its former condition for less than the $275 indicated by the testimony for plaintiff. No such proof was introduced, and we think the court was warranted in treating the case as one where the property was totally destroyed and nothing but wreckage left. In that view of the case the court did not err in giving the seventh instruction. Upon the whole case, also, we think the damages not excessive. The judgment is therefore affirmed.

*Affirmed.*

Mr. Justice Niehaus took no part.