## E. E. Earp, et al., v. America D. Lilly.

1. VERDICT—*when not disturbed.* A verdict will not be disturbed as contrary to the evidence where it fairly tends to prove the allegations of the declaration and the defendants have not taken the stand and testified in contradiction of the facts *prima facie* established by the plaintiff's proof.

2. INSTRUCTION—*when, proper, which pertains to joint and several liability of the defendants.* An instruction in an action under the Dram-Shop Act is not improper which tells the jury that such action was several, when in fact it is joint and several, and likewise tells the. jury that they might find all, some or none of the defendants guilty.

3. EXEMPLARY DAMAGES—*when award of, proper, in action under Dram-Shop Act.* Where the evidence tends to show that the defendants sold liquor to a person whom they must have known was in the habit of becoming intoxicated, an award of exemplary damages is warranted.

4. DRAM-SHOP ACT—*what does not bar action under.* The fact that the plaintiff in an action instituted under this Act had written a letter to the defendant, requesting his aid in checking the drink habit of her husband, in which she stated that she has no objection to the sale to her husband by the defendant of an occasional drink, does not bar an action.

5. DRAM-SHOP ACT—*what does not affect general liability of defendants in action under.* The question as to when the several defendants to such an action began the sale of intoxicating liquors, does not affect their joint liability for injuries resulting from habitual intoxication resulting from such sales.

6. JURISDICTION—*limit of Appellate Court's.* The Appellate Court has no jurisdiction to pass upon the question as to whether a particular statute is constitutional.

Action on the case under Dram-Shop Act. Appeal from the Circuit Court of Moultrie County; the Hon. W. C. JOHNS, Judge, presiding. Heard in this court at the November term, 1904. Affirmed. Opinion filed April 20, 1905.

SENTEL & WHITFIELD, J. J. FINN and J. C. LEE, for appellants.

R. M. PEADRO and EDWARD C. CRAIG, for appellee.

MR. JUSTICE PUTERBAUGH delivered the opinion of the court.

This is a suit brought July 22, 1904, by America D.

Lilly, appellee, against appellants, Tolen, Earp, Goldburg, Monroe, Hammons and four others, to recover damages under the Dram-Shop Act, resulting from alleged sales and gifts to her husband, John P. Lilly, of intoxicating liquors. She obtained a verdict in the Circuit Court against appellants for $2,500. Motions by the defendants for a new trial, and in arrest of judgment, were overruled and judgment entered on the verdict. The cause is brought to this court upon an appeal by all the defendants against whom judgment was rendered.

The declaration, to which the general issue was interposed, consists of two counts; the first alleges, in substance, that the defendants were the keepers of dram-shops, and as such, sold and gave to John P. Lilly, the husband of plaintiff, intoxicating liquors, and thus caused him to be, and become, an habitual drunkard, etc., whereby plaintiff was injured in her means of support. The second count alleges the same facts, and further, that said Lilly, while so intoxicated, squandered a large amount of money and property belonging to plaintiff, and that she was thereby injured in her support and property.

The errors chiefly relied upon for reversal, are, that the verdict is contrary to law, is not sustained by the evidence, and is excessive; that the trial court erred in its rulings upon the instructions; and that the Dram-Shop Act is unconstitutional.

The following facts are clearly established by the evidence: America D. Lilly, the appellee, was, on August 18, 1898, married to John P. Lilly, who, at that time and at the time of bringing this suit, was the owner, editor and proprietor of the Saturday Herald, a newspaper published and printed in Sullivan, Illinois. He also owned and conducted a large and profitable printing establishment in Moultrie county, then worth about $3,500. At the time of her marriage, appellee, who had been a school teacher, had accumulated about $1,200. Lilly was then healthy, vigorous, sober, industrious and attentive to business. The circulation of his paper was about 1600. The business was

prosperous and was earning a surplus each month.   About
eight months after his marriage, Lilly began to use intoxi-
cating liquors to excess, and gradually became a habitual
drunkard, spending the greater part of his time, and his,
and appellee's money, in different saloons.   He was often
so intoxicated that he was unable to attend to his business
affairs and finally almost entirely neglected the same.   He
frequently indulged in protracted sprees lasting for several
days, and sometimes a week.   His health became so greatly
impaired thereby, that he finally became a physical and
mental wreck, and unable to work, had he so desired.   As
a result he lost many of his patrons and the business de-
preciated to such an extent that appellee was compelled
to take charge of and conduct the same, to prevent a total
loss of the money invested.   At the time of the bringing
of the suit at bar, some $800 of appellee's private means
had been expended; the printing plant and newspaper had
depreciated in value to the extent of from $1,000 to $1,500,
and was not paying expenses; the rent was a year in ar-
rears, and other indebtedness to the extent of about $700
was outstanding and unpaid.   The evidence further shows
that during the last six years appellee had received but $75
with which to clothe herself; that she was compelled not
only to attend to her household duties and make and re-
pair her husband's wearing apparel but that she was also
compelled to devote almost her entire time to the conduct
of the business; that she was compelled to take her meals
at irregular hours and subsist upon the plainest and cheap-
est food.   It is strenuously insisted by counsel for appellants
that even if Lilly was an habitual drunkard, the evidence
fails to show that such condition was caused, in whole or
in part, by liquor furnished to him by appellants.

We have carefully considered and weighed the evidence
as contained in the record and are of opinion that it fully
warranted the jury in finding that Lilly frequently visited
the various saloons of the several appellants, and that it
may be reasonably inferred from the evidence that his
habit of becoming frequently intoxicated was well known

to them. There is evidence tending to show that he drank liquor in the saloons of each of them, and in several instances when he was in an intoxicated state. We will not attempt here to rehearse or discuss the testimony of the different witnesses in detail. It will suffice to say that the jury were warranted in finding therefrom, that the proximate and efficient cause of his physical, mental, moral and financial degradation, was due in part, at least, to the intoxicating liquor furnished to him by the several appellants. Neither of them saw fit to testify in his own behalf, nor to call witnesses to controvert the material facts. We therefore would not be justified in disturbing the finding of the jury, which has been approved by the trial judge.

In O'Halloran v. Kingston, 16 App. 659, this court said: "It is urged that as to some of the appellants the proof is not sufficient; that it does not show that their sales contributed in any substantial or material degree to the habitual intoxication of the plaintiff's husband. As already stated, we think this position not well taken. It is shown that he visited all the places in question and obtained more or less liquor at each. How much he obtained at each and to what extent the act of each defendant contributed to the habitual intoxication it is impossible to state with certainty. * * * And while those who contribute in a small degree may be thus made to suffer as much as those who are more culpable, yet it is a condition which is applied to the traffic in liquor which the legislature had the power to impose, and which the courts cannot ignore.

"It must be remembered also, that the risk thus involved was known to and therefore voluntarily assumed by appellants when they engaged in the business, so that, in a legal sense, it cannot be said that they are surprised by the enforcement of the law. With the policy of the law we have nothing to do. That is a question for the legislature."

It was there further held that it will not avail defendants in cases of this character to show that other persons, as well, had furnished liquor to the intoxicated person.

It is contended that the court erred in giving to the jury

Earp v. Lilly.

the instructions offered by appellee. The first told the jury that the action was several, when in fact it was joint and several; but it further told the jury that they could find all, some or none of the defendants guilty. We fail to perceive how the error complained of could have prejudiced appellants. An instruction substantially similar to the second was approved by this court in Herring v. Ervin, 48 App. 369, and in Moulton v. Gibbs, 105 App. 104. It is insisted that the fifth and sixth instructions, which relate to exemplary damages, were erroneous for the reason that there was no proof of actual damages, nor any upon which the award of exemplary damages could be predicated. We are of opinion that actual damages to the extent of the amount of the verdict are clearly shown. The uncontradicted evidence of appellee shows that not only were her private funds dissipated to the extent of $800, but that she was, by the wrongful acts of appellants, deprived of necessaries, comforts and luxuries, which she would otherwise have enjoyed. The uncontroverted evidence shows that the value of the printing establishment and newspaper business had decreased to the extent of from $1,000 to $1,500, and that indebtedness of $800 had accrued for which such property was liable. The means of appellee's husband, who was legally and morally bound to supply her with the necessaries and comforts of life, were to this extent diminished. His capacity to follow his chosen avocation was almost, if not entirely, lost. To the extent, at least, of a right to a sufficient and comfortable maintenance, she had an interest in his capacity to labor and in all his resources. In Meidel v. Anthis, 71 Ill. 241, it is held that the phrase "means of support," in its general sense, embraces all those resources from which the necessaries and comforts of life are or may be supplied, such as lands, goods, salaries, wages, or other sources of income, and in a limited sense, any resource from which the wants of life may be supplied.

We are, however, of opinion that the jury were not unwarranted in assessing exemplary damages.

The evidence tends to show that appellants sold liquor

to one whom they must have known was in the habit of becoming intoxicated—in other words, to an habitual drunkard. They were, therefore, guilty of a wilful violation of the statute. Wolfe v. Johnson, 45 App. 122.

In Kennedy v. Sullivan, 136 Ill. 94, the court says:

"The evidence shows that Cornelius Sullivan was a man who was 'in the habit of getting intoxicated,' and it justifies the conclusion that such fact was fully known to all the defendants. Any sale or gift of intoxicating liquor to him was therefore unlawful. * * * The sales, if made, were wilful violations of the law which forbids such sales to a person who is intoxicated. It was a question of fact for the jury to determine, whether or not the defendants had been guilty of wilful, wanton, reckless and unlawful misconduct. We are not prepared to hold, under the circumstances of the case as disclosed by the testimony, that it was error to give the jury an instruction under which, if they thought it just and proper, they might allow exemplary damages."

On May 10, 1904, appellee wrote to appellant Goldburg a letter which was introduced in evidence by appellants, but not abstracted by counsel, which letter is as follows:

MR. GOLDBURG.

I ask you in a friendly way if you cannot discourage Mr. Lilly loafing and drinking in your saloon; he is drinking so very hard; don't you realize the fact that he is being ruined mentally, physically and financially? Why not ask him to desist; reason with him; can't you help me to influence him to take some interest in life? I would like to have him do something to regain his health; sure it is no recommendation to your business to have wrecks charged to your shop. You know when he has enough; can't you stop him? Then I would not object to an occasional drink, if he would drink and go about his business. Won't you please refuse him? As a friend I call your attention to his condition. Who is responsible—the saloons of the town. You surely have noticed his inattention to business. You know the cause—you will know the result.

MRS. JOHN P. LILLY.

The ninth instruction offered by appellee told the jury in effect, that although the plaintiff wrote to the defendant Goldburg that she did not object to his selling her husband liquor occasionally, that fact would not of itself bar her right to recover in this case, but that fact might be considered by them in mitigation of damages.

Appellants contend that the instruction was erroneous for the reason, that under the law the statement by appellee referred to, barred her right to recover against Goldburg unless it was shown that he sold her husband liquor more often than " occasionally." The construction sought by counsel to be placed upon the language in question would be manifestly unwarranted, unreasonable and unfair. The instruction is not subject to the objection interposed, and is, in fact, much more favorable to appellant Goldburg than otherwise. It, in effect, informed the jury that the letter tended to mitigate the damages, a matter upon which reasonable minds may well differ.

It is urged that the court erred in refusing to give appellants' third instruction, which told the jury that if defendant Goldburg was not in business and made no sale or gift of liquor to the husband of plaintiff, prior to the 10th day of May, 1904, although he may have sold or given liquor to the husband of plaintiff between that time and the commencement of this suit, he could not be held liable for any greater sum than the amount of damages sustained by her in her property or means of support between such time and the commencement of this suit. The instruction was properly refused.

The question as to the several defendants beginning their sales of intoxicating liquors at different periods does not affect their joint liability for injuries resulting from habitual intoxication resulting from such sales.

In Lane v. Tippy, 52 App. 532, it is said: "It is contended, in effect, though not in exact terms, that in order to render appellants jointly liable their sales must have begun at the same time and must have kept pace together to the end of the period sued for. Such a construction of

the law would make it hopelessly inoperative.    *    *    *
If the sales of one appellant began a few weeks or even
months before the sales of the others, yet if the sales were
continued contemporaneously for a period of time, appel-
lants are all responsible for the damages resulting within
reasonable limits, and it is not necessary, with surgical pre-
cision, to sever the damages so that they may begin and
end with the commencement and the cessation of contem-
poraneous sales."

Furthermore, the evidence in the record does not warrant
the instruction in question.* Counsel for appellants con-
tends that the evidence shows that Goldburg had only been
in business since May 10, 1904. We think that the evi-
dence of appellee and other witnesses clearly established
the fact that he was engaged in the business prior to that
date. While it is true that he testified that he had been in
the saloon business since May 10, 1904, it is also true that
he failed to testify that he had not been so engaged nor that
he had not furnished liquor to Lilly prior thereto. If such
was the fact, it may be reasonably assumed that he would
have so testified expressly, unequivocally and categorically.
Moreover, he states that he received the letter above quoted
on May 10, 1904. If he had but started in business on that
day, it is most remarkable that a letter of that character
should have been written at that time. It is a significant
fact that, notwithstanding appellee's appeal to him to de-
sist, he failed, while on the witness stand, to state that he,
to any extent, complied with or even heeded the same.

It is finally urged that the Dram-Shop Act is unconsti-
tutional; that while purporting in its title to relate to the
licensing of the sale of intoxicating liquors, in the body of
the act, the giving of such liquors is restricted, which re-
striction in no way relates to the general subject of licenses;
that the act is therefore in violation of article 4, section 13
of the Constitution of Illinois, which provides that no act
thereafter passed shall embrace more than one subject, and
that shall be expressed in the title. The validity of the
statute in question is vital to the case at bar. The act

creating Appellate Courts withholds from our jurisdiction cases involving the validity of statutes, or the construction of the constitution. It is therefore unnecessary for us to determine the question.

In the light of the foregoing views the judgment was proper and must be affirmed.

*Affirmed.*