Henry Moffitt and Walter J. Emde, Appellees, v. O. L. D. Forwarding Company, and Lewis P. Smith, Appellants.

**Term No. 47F17.**

280

Opinion filed April 21, 1947. Released for publication June 2, 1947.

Jos. B. McGlynn, of East St. Louis, for appellants; Wayne P. Williams, of Pittsfield, of counsel.

Johnson & Johnson, of Belleville, and Philip G. Listeman, of East St. Louis, for appellees.

Mr. Presiding Justice Culbertson delivered the opinion of the court.

This is an appeal by appellants, O. L. D. Forwarding Company, and Lewis P. Smith (hereinafter called defendants) from judgments entered in the circuit court of St. Clair county, Illinois, in favor of plaintiff appellee Henry Moffitt for the sum of $2,775 and costs of suit, and in favor of plaintiff appellee Walter J. Emde for the sum of $1,875 and costs of suit.

This is an action wherein the plaintiffs sought to recover damages for personal injuries from the defendants, O. L. D. Forwarding Company and Lewis P. Smith as the result of an automobile accident which occurred on the 5th day of May 1945 on U. S. Route 40, east of Highland, Bond county, Illinois. From the evidence produced on the trial it appears plaintiffs are Illinois state highway policemen and on the night of the accident in question had been informed by their superior officers that the truck involved in this accident was being driven in such a reckless manner that vehic-

ular traffic, including busses, was being driven off the road and acting on that information plaintiffs proceeded in an automobile east on Route 40 in pursuit of the defendant's truck, and having been assigned to the task of apprehending and overtaking defendant's truck, the trip on which plaintiffs were engaged was being made for that and no other purpose.

It appears from the evidence as plaintiffs arrived at a place on the highway just east of Highland they encountered some fog that enveloped the highway for short spaces and which fog was described as being "spotted and in some places heavier than others" and there were places where there was no fog. It appears after plaintiffs encountered the fog they reduced the speed of their car to between 45 and 50 miles an hour, and traveled slower when traveling through the fog banks. The plaintiff Emde testified he could not tell just how fast they went through the fog but they did not go through the fog banks at 45 or 50 miles an hour and when they went through the fog banks he had his foot off the accelerator and on the brake. The plaintiff Moffitt testified after plaintiffs got into the fog they slowed down some and as they were traveling along they had their headlights on and their police siren was sounding. It further appears from the evidence when plaintiffs were about 50 feet beyond a fog patch they had just passed through they observed the lights of some west-bound traffic and for the first time saw defendant's unlighted truck standing in their path of travel, at which time they were traveling between 40 and 50 miles an hour. When the truck was first observed the car lights of the car coming west were alongside the truck and the truck was 40 or 50 feet ahead of the car being driven by the plaintiff Emde. The plaintiff Emde testified he applied the brakes immediately upon seeing the truck and that they "took hold" and made skid marks on the pavement 30 to 35 feet long immediately back of the truck with which plaintiffs col-

lided. It appears from the evidence there were no lights on the truck and there had been no flares or fusees put out. The defendant's truck was occupying the south half of the highway. After the collision the driver was found lying across the seat of the cab asleep and was awakened by the officers by striking him across the soles of his shoes with a policeman's staff. The truck was a semi-trailer type with six wheels and three axles and was painted gray and the rear end, plaintiffs testified, looked very much like the color of the highway.

As a result of this accident the plaintiff Emde sustained fractures of the ninth and tenth ribs, contusions in the front parietal area, and contusions of his right chest, legs and hands. He suffered a lacerated lump at the base of his left thumb. His upper body was taped for four weeks to permit the fractured ribs to unite. This plaintiff suffered intense pain on breathing, walking, or upon any movement of his body for four weeks after the accident, and for the next two weeks the pain was described as being "uncomfortable." At intervals up to the time of the trial, particularly during a change of the weather, this plaintiff testified he suffered pain in his chest, back and ribs.

As a result of the accident the plaintiff Moffitt had his four lower front teeth knocked loose and was thereafter required to have such teeth removed and a partial plate substituted. He also suffered two broken ribs, a contusion of his right forehead, and on his right knee. The knee was taped up and heat applied to it to ease the pain. His entire chest was taped up to immobilize the fractured ribs. Both his eyes became severly blackened and he is subject to severe headaches at times since the accident, which the doctor believes is not a permanent condition. He is also suffering from traumatic arthritis in the right knee-joint, which is a permanent condition. We believe this fairly summarizes the evidence produced on the trial.

At the close of plaintiffs' case in chief the appellants offered motions for directed verdicts and same were denied by the court. Thereupon the defendants rested their case without the introduction of any evidence and again made motions for directed verdicts in their favor, which were denied by the court. The jury returned verdicts in favor of the plaintiffs as hereinbefore set forth. Judgment on said verdicts was rendered in favor of plaintiffs and against the defendants and thereafter, and within 10 days from the rendition of said judgments, the defendants filed motions for judgment notwithstanding the verdicts and for new trial, and after argument these motions were overruled and denied by the court and the judgments theretofore rendered confirmed. From these judgments so rendered this appeal has been perfected.

The errors relied upon by defendants for reversal may be fairly summarized as contending that defendants' motions for directed verdicts in their favor should have been allowed, that the verdicts were contrary to the law and the evidence in the case, that the manifest weight of the evidence showed that plaintiffs were guilty of contributory negligence, and that the verdicts of the jury were grossly excessive.

A motion for directed verdict by a defendant is in the nature of a demurrer to the evidence, and the only question is whether there is any evidence in the record tending to prove the allegations of the complaint (*Tidholm v. Tidholm,* 391 Ill. 19; *Ryan v. Deneen,* 375 Ill. 452). In considering a motion for directed verdict, the court cannot weigh the evidence, but must consider the evidence in its aspect most favorable to plaintiff, together with all reasonable presumptions and inferences to be drawn therefrom, to determine whether there is a failure of proof as to an essential element of the cause of action (*Weinstein v. Metropolitan Life Ins. Co.,* 389 Ill. 571). These same rules apply

to both motions for directed verdicts and to motions for judgment notwithstanding the verdict.

 Giving consideration to these well-established principles of law it appears to us from a consideration of the evidence in this case that the court was clearly right in denying the motions for directed verdicts and the motions for judgment notwithstanding the verdicts. The defendants in this case having failed to offer any evidence, plaintiffs are entitled to all favorable inferences legitimately arising from the evidence, and the verdicts should remain undisturbed unless it clearly appears they were the result of passion or prejudice or contrary to the clear weight of the evidence (*Kelly v. United Benefit Life Ins. Co.*, 275 Ill. App. 112).

The question of contributory negligence is preeminently for the consideration of the jury, as such negligence cannot be defined in exact terms, and unless it can be said that the action of the injured person is clearly and palpably negligent it is not within the province of the court to substitute its judgment for that of the jury (*Blumb v. Getz*, 366 Ill. 273, 277). Before the question of contributory negligence can be said to be established as a matter of law, the conduct of the injured party must have been so clearly and palpably negligent that all reasonable minds would so pronounce it without hesitation or dissent (*Hellwig v. Lomelino*, 309 Ill. App. 369, 375).

Testing the evidence by these established principles of law we are unable to agree that the verdicts in this case were contrary to the law and the evidence, nor are we disposed to say the plaintiffs, or either of them, were guilty of contributory negligence as a matter of law.

 We are unable to agree with the contention that the verdicts of the jury were grossly excessive. The verdict of the jury in a personal injury case, approved by the trial court, will not be set aside as ex-

cessive unless it is so palpably excessive as to indicate some improper motive on the part of the jury (*Mueth v. Jaska,* 302 Ill. App. 289, 296; *Crane v. Railway Express Agency, Inc.,* 293 Ill. App. 328).

No reversible error appearing in the record, the judgments of the circuit court of St. Clair county are hereby affirmed.

*Judgments affirmed.*

BARTLEY and SMITH, JJ., concurring.