Sam Santiemmo, Appellee, v. Days Transfer, Inc., Appellant.

Gen. No. 46,715.

First District, Second Division.
April 3, 1956.
Released for publication April 24, 1956.

Albert M. Howard, of Chicago, for appellant; Charles D. Snewind, of Chicago, of counsel.

George Simon, Warren J. Hickey, and Edward Wolfe, all of Chicago, for appellee; Edward Wolfe, of Chicago, of counsel.

PRESIDING JUSTICE McCORMICK delivered the opinion of the court.

This appeal was taken from a judgment entered in the Circuit Court of Cook County on a verdict for the plaintiff assessing the plaintiff's damages at the sum of $15,000.

The defendant here contends that the verdict is against the manifest weight of the evidence; that the trial court erred in the introduction and exclusion of evidence; that the argument of plaintiff's counsel to the jury was improper; that the jury was improperly instructed; that the court erred in denying defendant's motions for judgment notwithstanding the verdict and for a new trial; and that the verdict is grossly excessive.

It appears from the evidence that the accident out of which this action arose happened February 2, 1954 between seven and eight o'clock in the evening, on route 112, approximately two miles west of Cambridge Junction in the State of Michigan. The plaintiff was driving his tractor, which was attached to a trailer. He was eastbound, while the defendant, operating a similar tractor and trailer, was westbound. In passing, the vehicles collided.

Route 112 at the place of the accident is a two-way highway, with black top pavement twenty feet, six inches wide. There is room on the paved portion of the road for two lanes of traffic, one eastbound and the other westbound. There is a curve in the highway to the south of the point of the accident and a similar curve to the north. There is a straight roadway between the curves, and at both ends the road curves toward the north. On both sides of the black top pavement there is a shoulder or berm, and on the south side there is a drainage ditch running along the road.

The plaintiff was driving at a speed about forty miles an hour as he approached the scene of the accident. He saw the defendant's truck approaching him about two or three blocks away, and when it was about two blocks away he noticed that the defendant's tractor and trailer were "staggering"—going from one lane to the other, crossing the center line. The plaintiff reduced the speed of his equipment to about twenty miles an hour, pulling his equipment off the highway so that

his right wheels were a foot or two off the highway and on the right shoulder. At the time of the impact the left wheels of the defendant's equipment were in the south lane. The left front of defendant's trailer hit the left side of plaintiff's equipment. The plaintiff's tractor was torn loose from its trailer and the trailer was tipped over on the highway.

The plaintiff and a disinterested witness, who testified on behalf of the plaintiff, were the only occurrence witnesses who testified at the trial. Elliott, the disinterested witness, who was driving a car following plaintiff's truck, testified that at the time of the collision the defendant's truck was on the center line or beyond it and that the plaintiff's truck was not near the center line of the road, but was well on its own side.

The defendant strenuously contends that even though it offered no evidence concerning the occurrence, the jury should have disregarded the testimony of the plaintiff and his disinterested witness because of contradictions therein. Defendant also contends that the plaintiff's testimony was contradicted by his pretrial deposition.

When questioned at the trial the plaintiff admitted that he had made the statements in the deposition. These statements indicated a difference of some three or four feet in the position of the truck with reference to the center line of the road. He explained the variance apparently to the satisfaction of the jury. Counsel for the defendant in his opening statement assumed it to be a fact that the unit of the defendant was "staggering on the road," and gave as the reason therefor that the unit had slipped off the edge of the pavement and the driver was bringing it back. He further stated that whether it was an inch one way or the other of the center line would be for the evidence to show, and that the plaintiff either knew or should have known that the truck of the defendant "was in trouble" while he was some distance down the road.

The defendant also complains that the testimony of the disinterested witness and the plaintiff with reference to the position of the truck is not in accord. The variances complained of in the testimony are no more than appear in an ordinary lawsuit. Witnesses are stating their memory of the occurrence. When the testimony of all witnesses is exactly alike it awakens suspicion. When the testimony concerns distances it cannot be measured by a mathematical formula. It is the duty of the jury to consider the evidence as a whole. Differences between witnesses to a much greater degree than those here apparent are daily reconciled in lawsuits by the trier of the fact, whether judge or jury.

As we have indicated, no evidence with reference to the occurrence was offered by the defendant. Under such circumstances, if there was any credible evidence in the record to prove the essential elements of the plaintiff's case, the trial court could not set aside the verdict as against the weight of the evidence. Where defendant has failed to offer any evidence, plaintiff is entitled to all favorable inferences legitimately arising from the evidence, and a verdict for the plaintiff should remain undisturbed unless it clearly appears that it was the result of passion or prejudice or contrary to the clear weight of the evidence. Moffitt v. O. L. D. Forwarding Co., 331 Ill. App. 278; Kelley v. United Benefit Life Ins. Co., 275 Ill. App. 112. A verdict will not be disturbed as contrary to the evidence, where it fairly tends to prove the allegations of the complaint, and the defendants have not taken the stand and testified in contradiction of the facts prima facie established by the plaintiff's proof. Earp v. Lilly, 120 Ill. App. 123. In the case of Graham & Morton Transp. Co. v. Owens, 165 Ill. App. 100, the court said:

"As to the merits of the case at bar, six witnesses testified in behalf of appellant, but appellee did not submit any testimony. After a careful consideration of

the testimony, . . . we think it fully justifies a finding against the defendant . . . .

"We cannot doubt from the testimony in the record that Owens, appellee, knew that the sugar he was getting from Fonger, was stolen, and while it is true, that the evidence in behalf of appellant is somewhat lacking in that definiteness which might be desired, yet, as the defendant produced no testimony, we are bound by the testimony offered in behalf of the appellant, together with all reasonable inferences to be drawn therefrom."

The evidence in behalf of the plaintiff in the case before us was sufficient to establish liability. Neither the trial court nor a reviewing court can properly substitute its judgment for that of the jury merely because it might draw other conclusions from the evidence before it.

The plaintiff testified that at the time of the crash he "blacked out"; that when he got out of the cab of the tractor he felt "dizzy and numb"; that following the accident he was taken by a person to a store two blocks away and at that time he still felt dizzy and weak and was numb all over; that he was then taken to Detroit where he lay on a desk in the truck terminal for about three or four hours after taking aspirin, and during that time became violently ill. After he returned to Chicago he saw his attending physician, Dr. Romano, February 4, 1954, two days after the accident. He was examined, given some pills, and told to remain in bed as much as he could, and x-rays were taken. He had no outward evidence of injuries, such as bruises, lacerations, cuts or bumps on any part of his body, and the x-rays were negative.

Dr. Romano testified that he made a complete physical and neurological examination on the plaintiff's first visit and that he found no bruises, contusions or neurological findings suggesting a skull fracture. His diagnosis was that the plaintiff had suffered a cerebral

concussion with possible concussive post cranial syndromes and neuroses and that such conditions could result without a blow on the head; that there might be a shaking of the head so violent that it would cause trauma to the brain itself and that such an injury would not be shown by objective findings. It should be noted that the collision was one of considerable force. The left front corner of the defendant's trailer was caved in at least three or four feet. The coupling between the plaintiff's tractor and the trailer was broken, the trailer (loaded with 20,000 to 25,000 pounds of freight) was tipped over, and the tractor ended up facing in the opposite direction.

On September 24, 1954 Dr. Romano sent the plaintiff to Dr. Joshua I. Spiegel, brain surgeon and neurologist, who gave him a neurological examination and examined the x-ray report. He found no objective symptoms. He made a diagnosis and discussed the matter with Dr. Romano. Testifying over objection, Dr. Spiegel stated that his diagnosis was a post concussion syndrome, and that on January 14, 1955 he again gave the plaintiff a neurological examination and reached the same diagnosis. Dr. Spiegel was asked a hypothetical question and over the objection of the defendant gave as his opinion that the plaintiff's present state of ill-being "might or could have been, or resulted from the accident described." He then testified over objection that it was impossible for him to give an opinion as to whether or not the injury was permanent, but stated that some patients take years to get well—other patients do not get well. Dr. Romano also testified, over objection, that in his opinion there could or might be a causal relation between the accident and the present ill-being of the plaintiff, and that the plaintiff will continue to have pain for an indefinite period of time. On the witness stand plaintiff complained of dizziness "in my head" and "a sort of heaviness in the back of my head" and about "the pain that travels over to the

left front which caused the trouble of my headaches that I got."

Defendant strenuously argues that the court should not have permitted either Dr. Romano or Dr. Spiegel to answer the hypothetical question concerning causation. With reference to the testimony of Dr. Romano it has been held that an attending physician may make a diagnosis based completely on subjective findings. Kaufman v. Kaufman, 164 F.2d 519, and see Wigmore on Evidence, 3rd Ed. Sec. 688. This is more particularly true when the disability is psychiatric or neurological in character. It has long been the rule in this State that the attending physician may testify as to the statements made to him by the plaintiff concerning his condition, if such statements had guided him in making his diagnosis. Devine v. Rothschild, 178 Ill. App. 13; Quirk v. Schramm, 333 Ill. App. 293; Olin Industries v. Industrial Commission, 394 Ill. 202; Griswold v. Chicago Rys. Co., 253 Ill. App. 498. The defendant insists, however, that Dr. Spiegel should not have been permitted to answer the hypothetical question with reference to the possibility of the conditions having resulted from the accident because he had based his entire diagnosis upon subjective findings, and because, as defendant contends, he having examined the plaintiff solely for the purpose of testifying as an expert, must confine his testimony solely to objective symptoms. It is undoubtedly the law that the testimony of a physician examining a patient solely for the purpose of testifying in the trial as an expert witness is confined solely to objective symptoms. Sanitary Dist. of Chicago v. Industrial Commission, 343 Ill. 236; Casey v. Chicago City Ry. Co., 237 Ill. 140; Greinke v. Chicago City Ry. Co., 234 Ill. 564. However, the record here shows that the plaintiff was sent to Dr. Spiegel by Dr. Romano because Dr. Spiegel was a specialist and consultant in neurology and psychiatry and that Dr. Romano subsequently did consult with Dr. Spiegel

concerning the plaintiff. Therefore Dr. Spiegel was not in the category of a physician examining the plaintiff for the sole purpose of testifying at the trial of the case.

In its brief the defendant makes the statement that Dr. Spiegel stated "in his opinion the plaintiff's present condition was due to injuries received in the accident and that the same were permanent" and that Dr. Romano testified that "there was a causal relationship between the accident and the patient's present alleged state of ill-being." This is not borne out by the record. Both physicians testified that there might or could be a causal relation upon the facts in the record set forth in the hypothetical question propounded to them. The rule has been laid down repeatedly by our courts that only where there is no dispute as to whether or not the plaintiff was injured as a result of the occurrence in question can the expert categorically state that the injury did or did not cause the physical or mental conditions complained of. Where there is a dispute as to the injury, then the attending physician or the physician testifying as an expert may be properly asked as to whether he can state with a reasonable degree of medical certainty whether there might or could be a causal relation between the facts assumed in the hypothetical question and the condition of the hypothetical patient. Kimbrough v. Chicago City Ry. Co., 272 Ill. 71; City of Chicago v. Didier, 227 Ill. 571; Hogmire v. Voita, 319 Ill. App. 644; Jannusch v. Weber Bros. Metal Works, 249 Ill. App. 1; Klinke v. Great Northern Life Ins. Co., 318 Ill. App. 43. The hypothetical question in the case before us was couched in the approved form, and the trial court properly allowed the physicians to testify.

The defendant also objects that it was prejudiced by improper argument of counsel for the plaintiff. Plaintiff's counsel, with reference to the absence of the driver of defendant's truck, argued that where a wit-

ness is available to the defendant who is not produced at the trial of the case it will be presumed that he would testify unfavorably to such defendant unless the latter accounts for not producing him at the trial, and that the absence of the witness was not adequately explained. In his opening statement counsel for the defendant told the jury that Mr. Price, the driver of the defendant's tractor at the time of the collision, was no longer with the company and had not been for some time, that the defendant was attempting to locate him so as to have him testify at the trial, that at that time defendant was unable to do so, and that Mr. Price might or might not testify. During the trial, the executive personnel and transportation director for the defendant company testified that Price was not with the company and had not been since October 10, 1954, when he left the employ of the company. This is the only evidence in the record which attempts to explain the absence of the driver.

The right of counsel to make such comment is thoroughly discussed in Beery v. Breed, 311 Ill. App. 469, which was a case where the defendant failed to offer any testimony, and the court therein held that where the plaintiff makes a prima facie case the failure of the defendant to produce any evidence warrants the inference that the testimony would be unfavorable to him and that comment on such failure is proper. In Corso v. Knapp, 347 Ill. App. 556, it was held that where a party attempts an explanation of why a witness was absent the other party has a right to comment on what he considers the inadequacy of the explanation.

Counsel for the plaintiff had also argued that a Dr. Harold C. Voris who examined the plaintiff should have been produced. In his opening statement counsel for the defendant said: "We have the privilege for medical examination by the ruling of the court, which is part of our position what we intend to prove by the doctor to show he has no injury, but the condition Mr.

498

Santiemmo testified to, whether it was a mental one, or whatever it might be, nothing was injured, or no injury at all in connection with this accident." The plaintiff in his testimony stated that he had been examined also by a Dr. Voris, and in his argument to the jury counsel for plaintiff commented on the absence of the doctor at the trial, informing the jury that the plaintiff had been examined by order of court by a doctor on behalf of defendant.

■ The comment of counsel for the plaintiff on the absence of the witnesses was in our opinion proper. If so, the instruction given on behalf of the plaintiff was also proper. An instruction in substantially the same form was approved in Petersen v. General Rug & Carpet Cleaners, Inc., 333 Ill. App. 47.

■ ■ A witness for the plaintiff, one David Elliott, in his testimony stated that the plaintiff's truck was on its own side of the road and not near the center line; that the defendant's truck was either on top of the center line or beyond it, that the side of its equipment was in the center of the road and south of the center line; and that he could not tell in inches and feet the relative positions of the trucks with reference to the center line. Previous to the trial a statement was taken from the witness, and in the statement the witness said: "I cannot make a definite statement concerning the position of the two units in relationship to the center line." This portion of the statement was read to the witness on the trial, and he said that he did not know whether he had made the statement or not but that he would not deny that he made the statement at the time it was taken. The statement was signed by the witness. He had written on the statement: "This was read to me and corrections made; however, the final draft has not been made." It was dated January 17, 1955 and was signed by the witness. On the trial the witness stated that he had not read the statement but he had signed it merely for the purpose of identifica-

tion, and stated that the man who took the statement had assured him that he would prepare another draft of the statement and submit it to him. The witness was thoroughly cross-examined upon the statement. The entire impeaching value of the statement hinges on the meaning given the word "definite." It could properly be found that when the statement was given the witness meant no more by "definite" than that he could not fix the position of the trucks in inches and feet with reference to the center line. So interpreted, the statement was not contradictory of the evidence given by the witness from the witness stand. The court subsequently refused to admit the statement offered by defendant and defendant makes no point on this ruling. In any case, the rule is that in order to have such a statement admitted where the witness has stated that he could not tell whether or not he made the statement, it is necessary to produce the person who took the statement. The defendant in his examination got the statement before the jury, and under all the circumstances in the case comment upon the failure to produce the witness was proper. Beery v. Breed, supra; Corso v. Knapp, supra; Ranz v. Yaschenko, 329 Ill. App. 274.

Counsel also complains concerning certain instructions given on behalf of the plaintiff by the court, and objects to an instruction quoting the Michigan statute to the effect that whenever any roadway has been divided into "two or more clearly marked lanes for traffic" that a vehicle should be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety. The defendant argues that there is nothing in the evidence indicating that the road on which the accident occurred was clearly marked for specific lanes of traffic. The jury had before it pictures of the road showing a division and the evidence indicates that the road was so divided. The instruction was proper.

The defendant also urges that the court erred in giving the following instruction:

"The court instructs the jury that if you find from the evidence in this case that the plaintiff was free from contributory negligence and that the accident herein was caused solely by the defendant's vehicle being on the wrong side of the street, you should find the defendant guilty."

Defendant argues that the instruction lacked any reference to proximate cause and assumed that the defendant was in fact on the wrong side of the highway. In his preliminary statement counsel for the defendant said that he would leave it for the evidence to show as to whether or not the defendant's truck was over the center line and that it could have been an inch or two over. The evidence on behalf of the plaintiff that the defendant's vehicle was across the center line and on the wrong side of the road was uncontradicted. It has been held that if words are used in an instruction which have the same meaning as "proximate cause" the instruction is not erroneous. Chicago & E. I. R. Co. v. Crose, 214 Ill. 602; Beery v. Breed, 311 Ill. App. 469; Bobalek v. Atlass, 315 Ill. App. 514. If the accident was caused solely by the defendant's vehicle being driven on the wrong side of the road, it must have been the proximate cause of the accident.

Defendant also earnestly urges that the court erred in giving an instruction on behalf of the plaintiff with reference to the measure of property damages. The court instructed the jury that the rule which should be applied, was, that where the vehicle can be repaired, the measure of damages is the reasonable cost of making the necessary repairs.

An estimate proffered by the plaintiff showing the cost of repairs of his truck to be $4,417.76 was admitted by stipulation of the parties. The plaintiff testified that the tractor was his own equipment which he had purchased in the latter part of 1951 for $8,300 and that

at the time of the accident the equipment was in good condition; that the tractor was a GMC tractor with a "million miler" engine and had been driven 160,000 to 180,000 miles; that he did not know how much a similar tractor would be worth on the general market on the date of the occurrence.

A witness on behalf of the defendant was qualified as an expert. He testified that he had made an estimate of the cost of repairs to the truck in the amount of $1,963.40, but that he could not give an estimate of what the mechanical repairs would be to the inside of the housing if mechanical damage had been done; and that he did not take down the housing. The estimate, admitted in evidence, contained a statement that "There is some doubt on the trans. and rear axle. Engine will be checked in garage and estimated therein." The witness also testified that at the time he examined the vehicle it was in his opinion capable of being repaired. He also testified that at the time of the occurrence the value of a similar tractor with the same mileage would be between $3,300 and $3,700. The evidence as to value was uncontradicted and was not discredited. The defendant contends that the instruction proffered by the plaintiff was improper in that since this evidence was in the record the instruction should have included a statement that the cost of repairs should not exceed the value of the property before it was injured.

 Where property has been injured by a defendant and can be repaired, the true measure of damages is the reasonable cost of repairs providing that it is less than the value of the property before the injury. McDonell v. Lake Erie & W. R. Co., 208 Ill. App. 442, 454. The purpose of awarding compensatory damages is to make the injured party whole, but not to enable him to make a profit on the transaction. The plaintiff could not recover the cost of repairs exceeding the value of the truck. The jury had before them the estimate of the plaintiff in the amount of $4,417.76.

This estimate was $717.76 over the highest value placed on the truck by the defendant's witness. The amount of the verdict should be reduced by that sum.

We have carefully examined the other instructions which defendant urges were erroneously given on behalf of the plaintiff, and find no error in the ruling of the court.

■ ■ The defendant also urges that the verdict is so excessive that it indicates it was the result of passion, prejudice or sympathy, and contends further that it was not supported by the evidence. We have carefully examined the record and find that the verdict was supported by the evidence, and we find nothing to indicate that it was the result of passion or prejudice on the part of the jury. The question of damages is ordinarily one of fact for the jury to determine and the court cannot substitute its judgment for the judgment of the jury. Dodds v. Chicago Transit Authority, Gen. No. 46645 filed February 21, 1956; Garner v. Burns Mid-Town, Inc., 346 Ill. App. 162; Levanti v. Dorris, 343 Ill. App. 355; Gorczynski v. Nugent, 335 Ill. App. 63; Mueth v. Jaska, 302 Ill. App. 289. However, as we have pointed out, we feel that on the issue of property damage the judgment is excessive in the amount of $717.76. If the plaintiff will file with the clerk of this court within twenty days a remittitur in such amount the judgment of the Circuit Court will be affirmed; otherwise the judgment will be reversed and the cause remanded for a new trial.

Affirmed upon filing remittitur; otherwise reversed and remanded.

ROBSON and SCHWARTZ, JJ., concur.