P.A.M. TRANSPORT, INC., Plaintiff and Counterdefendant-Appellee, v. BUILDERS TRANSPORT, INC., *et al.*, Defendants and Counterplaintiffs-Appellants.

Fifth District   No. 5—90—0114

Opinion filed February 28, 1991.

Edward M. Wagner, of Heyl, Royster, Voelker & Allen, of Urbana, for appellants.

Tracy W. Resch, of Parker, Siemer, Austin, Resch & Resch, of Effingham, for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Defendants, Builders Transport, Inc. (hereinafter defendant), and Willie Vaughn (hereinafter Vaughn), an employee of defendant, appeal from a judgment of the circuit court of Effingham County in which defendants were held jointly and severally liable for $21,751.62 for damages incurred by plaintiff, P.A.M. Transport, Inc., due to a traffic accident between trucks owned by plaintiff and defendant. In this cause, defendants raise the following issues: (1) whether the trial court correctly applied the principles of comparative negligence; (2) whether the trial court's award for lost income for down time is supported by the evidence; (3) whether the trial court's award for costs of repairs to plaintiff's tractor and trailer is supported by the evidence; and (4) whether the trial court abused its discretion in imposing a discovery sanction which resulted in denying defendant the opportunity to present evidence on its cargo loss claim. We affirm as modified.

The facts in this case are relatively straightforward. In the early hours of November 9, 1987, plaintiff's driver, Ricky Joe Burney, was on a run from Memphis, Tennessee, to Chicago. His first stop was in Effingham. After this stop, Burney continued north on Interstate 57. Approximately 10 miles out of Effingham, Burney pulled the semi-tractor-trailer unit he was driving off onto the shoulder of the road to pour a fresh cup of coffee, to look at his map book, and to relieve himself. Burney testified that no part of his truck was left on the roadway and that all lights and flashers on his vehicle were illuminated.

Vaughn, defendant's driver, was simultaneously on a run which began in Dallas, Texas. He was accompanied by another driver. Vaughn started driving in Memphis and stopped at two rest stops between Memphis and the location of the accident. Vaughn was also northbound on I-57 at approximately 1 a.m., when the accident occurred. Vaughn testified that between 25 and 50 yards before reaching plaintiff's unit, he heard his right front tire blow out and his unit pulled to the right when he applied his brakes. The right side of defendant's unit struck the left rear of plaintiff's trailer and sideswiped it along the entire left side. After defendant's unit cleared plaintiff's unit, it veered sharply to the right, went off the shoulder, and came to rest in a cornfield. The unit completely burned, but the two drivers escaped. Burney received a ticket for driving over the allowable number of hours. He admitted being 10 hours over the permissible driving limit when the accident occurred. Vaughn was given a traffic citation for improper lane usage, to which he pleaded guilty. Vaughn also drew a diagram on a company accident report which showed plaintiff's vehicle as being parked entirely on the shoulder of the interstate.

The parties agree that the shoulder of the road is 10 feet or 120 inches wide. Plaintiff's unit was 102 inches wide. No witnesses testified that any portion of plaintiff's unit was on the roadway. No skid marks were left, and two State troopers who investigated the accident testified that there was no evidence of a blowout. Burney testified that he saw defendant's vehicle gradually leave the roadway and head toward his vehicle. Based upon this evidence, the trial court found defendants to be jointly and severally liable for 100% of plaintiff's damages.

The first issue we are asked to address is whether the trial court correctly applied the principles of comparative negligence. Defendant argues that the trial court incorrectly applied the doctrine of "last clear chance," which has been abolished and succeeded by the doc-

trine of comparative negligence in *Alvis v. Ribar* (1981), 85 Ill. 2d 1, 421 N.E.2d 886. Defendants contend that when the doctrine of comparative negligence is applied to the facts of this case, it is apparent that plaintiff is completely liable or, in the alternative, partially liable for defendant's damages. According to defendants, the accident would not have occurred if plaintiff's driver had not been driving in excess of the permissible driving hours and had not been parked illegally on the shoulder of the road. Plaintiff responds that the trial court did not apply the doctrine of last clear chance, but merely mentioned that theory as a historical note to the development of the law. Plaintiff contends that the trial court did apply the doctrine of comparative negligence, and that under the facts of this case, the trial court's decision that defendants were 100% liable is not against the manifest weight of the evidence. We agree.

■■ ■ Defendants are correct that the "last clear chance" doctrine has been abolished and that Illinois has adopted comparative negligence, in which a plaintiff's damages are reduced by the percentage of fault the trier of fact finds attributable to plaintiff. (*Alvis*, 85 Ill. 2d 1, 421 N.E.2d 886.) However, the manifest weight of the evidence standard applies where the trier of fact has addressed the degree of plaintiff's comparative negligence. (*Ford v. City of Chicago* (1985), 132 Ill. App. 3d 408, 412, 476 N.E.2d 1232, 1236.) When reviewing questions of negligence and proximate cause, a reviewing court will not disturb the trier of fact's decision unless it is clearly unwarranted by the evidence, and, where several reasonable inferences based upon the evidence are possible, the inference drawn by the fact finder must prevail. *Noel v. Jones* (1988), 177 Ill. App. 3d 773, 782, 532 N.E.2d 1050, 1055-56.

Plaintiff has cited at least two cases in which it has been held that the owner-operator of a parked car was not a proximate cause of an accident, *Long v. Soderquist* (1984), 126 Ill. App. 3d 1059, 467 N.E.2d 1153, and *Jeanguenat v. Zibert* (1979), 78 Ill. App. 3d 948, 397 N.E.2d 1235. Defendants contend that these cases are not controlling because they were decided prior to our supreme court's ruling in *Alvis v. Ribar*. What defendants fail to consider is that whether *Jeanguenat* or *Long* was decided under either the doctrine of contributory or comparative negligence is unimportant since both courts found as a matter of law that the parked cars involved in the accidents were not the proximate cause of either accident.

In *Jeanguenat*, a passenger injured in an automobile accident brought a personal injury action against the driver of the automobile in which he was riding, the owner-operator of a car parked illegally in

a no-parking zone, and the city for not placing adequate no-parking zone signs. The trial court directed a verdict for the owner-operator of the parked car and for the city. On review, the Third District Appellate Court affirmed the finding that where the portion of the road where the accident occurred was almost three car lengths across, where visibility was unobstructed, and where the driver had consumed in excess of 10 to 15 beers, was totally inattentive to the roadway, and was facing and talking with the passenger, the plaintiff, when he collided with the parked car, such driver was the sole proximate cause of the accident. The *Jeanguenat* court found that the driver's "total and unexplained inattention to the roadway while driving an automobile is conduct so outrageously negligent and reckless that in the exercise of reasonable diligence it could not be anticipated." 78 Ill. App. 3d at 951, 397 N.E.2d at 1239.

In the instant case, plaintiff's vehicle was parked illegally on the shoulder of the road, but, unlike *Jeanguenat*, there was no testimony that any portion of plaintiff's truck was on the interstate. Plaintiff's driver testified that he left the truck fully illuminated when he parked on the shoulder. Vaughn testified that he did not recall seeing any lights on, but admitted on cross-examination that the lights could have been on. Plaintiff's driver testified that he saw defendant's truck gradually leave the roadway and then come into contact with his truck. There were no skid marks. Vaughn testified that the accident was due to a blowout of his right front tire, but the trial court found this testimony not to be credible. After reviewing the record, we agree. There was no physical evidence to support Vaughn's blowout theory. Instead, the more likely explanation is that Vaughn failed to keep a proper lookout at the road ahead of him.

■ In *Long*, the defendant Soderquist had stopped to render assistance to Berndston, another defendant, who had collided with a guardrail. A sheriff's deputy came to render assistance, but was soon after taken away from the scene when another accident occurred in the vicinity. The deputy told the defendants to wait for him while he went to the other scene. As the defendants were waiting, the plaintiffs crested the hill, hit a patch of ice, and collided with the Soderquist vehicle which in turn collided with the Berndston vehicle. The trial court granted the defendants' motion for summary judgment. The plaintiffs appealed, arguing that summary judgment was improper because there were numerous material factual disputes, specifically: (1) whether and to what extent the defendant Soderquist's automobile protruded onto the highway; (2) whether the lights on Soderquist's automobile were illuminated; (3) whether the plaintiff

could have avoided the accident; (4) whether the lights on Berndston's automobile were illuminated; and (5) whether the deputy acted properly. The reviewing court found the entry of summary judgment was proper "[s]ince it is undisputed that the Long vehicle slipped on the icy bridge at the crest of the hill, and was thereafter out of control, the Soderquist and Berndston vehicles, regardless of their precise placement, cannot be said to be a proximate cause of the collision." (Long, 126 Ill. App. 3d at 1064, 467 N.E.2d at 1157.) The Long case is somewhat factually distinguishable from the case at bar. In Long, it was the plaintiff who hit the parked car on the side of the road. In the instant case, plaintiff was hit while parked on the shoulder of the road. However, the Long court's logic is undeniable and it is applicable in the instant case. Neither the placement of Burney's vehicle on the side of the road nor the fact that Burney had driven over the permissible number of hours was a proximate cause of this collision. Just because a person happens to be in a location where an accident occurs does not make him a proximate cause of the accident. This is certainly true in the instant case, because even if plaintiff's vehicle was not parked on the shoulder of the road, and even if plaintiff's driver had stopped driving for the day, defendant's driver would still have driven off the interstate. We are by no means advocating an absolute rule that a parked vehicle can never be a proximate cause of an accident. There may be instances in which a party who has parked a vehicle could be found negligent for an ensuing accident. However, we do not find this case to be one of those instances. Accordingly, the trial court's finding that plaintiff was not a proximate cause of the accident and that defendants were 100% liable for plaintiff's damages is not against the manifest weight of the evidence. We believe the trial court's discussion of the last clear chance doctrine was nothing more than a historical note. We find the trial court correctly applied the principles of comparative negligence.

The second issue we are asked to address is whether the trial court's award of lost income for down time is supported by the evidence. Defendants argue that evidence submitted to prove the loss of down time was without proper foundation and full of hearsay testimony which should never have been allowed. We agree.

The trial court awarded plaintiff $301.02 for income lost due to its tractor and trailer involved in this accident being out of commission. In order to arrive at this figure, the trial court apparently looked to the testimony of Riley Tessaro, plaintiff's casualty claims manager. Plaintiff submitted the following document, plaintiff's exhibit 17, in

which Tessaro concluded that the unit involved in the accident was down for 14 days due to damages sustained in the accident:

"To Whom It May Concern:

I have compiled the following information from figures furnished by Marketing and our Controller:

Gross Revenue:

| | | |
|---|---|---|
| 415 miles/day x 14 days | $5,810 [sic] | |
| Average Rev/mile | 97.5 | |
| Gross Revenue not realized due to downtime | | $5,664.75 |

Less Expenses:

| | | |
|---|---|---|
| -Fixed Expenses—per month average $3400/mo (1) Pro Rata 3400—[sic] 30 x 14 | | $1,587 |
| -Variable costs (2) 46¢ per mile 46 x 5810 | $2,673 | |

| | |
|---|---|
| Total Expenses | $4,260.00 |
| Loss of Income | $1,404.75 |

(1)  Insurance, taxes, interest, depreciation, etc.
(2)  Driver, fuel, repairs, maintenance, tires, etc.

Thank you,

P.A.M. TRANSPORT, INC.

Riley Tessaro
Casualty Claims Manager

RT/mw"

Upon cross-examination, however, Tessaro admitted that the figures used in the document were received by him from plaintiff's marketing department. Tessaro did not personally review any documents used by the marketing department and did not rely on any business document to produce the above figures. Further, Tessaro could not indicate what figures were included in parentheticals (1) or (2) or the etc. listed therein. He had no information or documents to indicate that plaintiff had to refuse loads and, if so, how many. Tessaro indicated that plain-

tiff's controller would have such knowledge, but plaintiff's controller was never called as a witness. Rick Burney, plaintiff's driver, testified that he had another load to pick up in Chicago after he delivered the cargo he was carrying, and he was certain that he was committed to drive for the three days following the accident, which he was unable to do. However, neither Burney nor Tessaro could testify whether any load leaving Chicago later on the day of the accident or the following day was or was not taken by another of plaintiff's trucks. Nevertheless, the trial court awarded plaintiff $301.02 for down time.

■ We find that plaintiff did not prove damages for down time. First, there was no testimony that plaintiff had to turn away customers due to the unit involved in this accident being out of operation. Second, plaintiff's exhibit 17 should not have been introduced into evidence, as it was clearly hearsay. Therefore, we find that the trial court erred in awarding $301.02 for down time and that the judgment should be reduced accordingly.

The third issue we are asked to address is whether the trial court's award for costs of repairs to plaintiff's tractor and trailer is supported by the evidence. Defendants argue that plaintiff never put forth any evidence as to what costs it actually expended in the repair of the tractor and trailer, and, therefore, was not entitled to any recovery. In the alternative, defendants argue that the trial court's award of waiver costs must be vacated, as the repairs were all done "in house" by plaintiff's staff, and plaintiff failed to prove how much it cost to have its own employees complete the repairs. Plaintiff replies that the fact that it made its own repairs in house does not render the testimony of qualified witnesses who gave estimates of repairs inadmissible and that the testimony of its witnesses concerning the costs of repair was sufficient. We agree.

■ If property has been damaged and can be repaired, the true measure of damages is reasonable cost of repairs, providing that it is less than the value of the property before it was injured. (*Santiemmo v. Days Transfer, Inc.* (1956), 9 Ill. App. 2d 487, 502, 133 N.E.2d 539, 547.) The purpose of awarding compensatory damages is to make the injured party whole, but not to enable him to profit at defendant's expense. (9 Ill. App. 2d at 502, 133 N.E.2d at 547.) Undoubtedly, difficulty in determining damages arises when the repairs are done in house, and there are no sufficiently definite guidelines to be relied upon when determining such damages. See *Central Illinois Light Co. v. Stenzel* (1963), 44 Ill. App. 2d 388, 195 N.E.2d 207.

▮ In the instant case, the trial court made the following determinations concerning the reasonable cost to repair the tractor and trailer in its judgment order:

"3. Reasonable cost to repair tractor:

a) Parts: fuel tank and tires, $1,726.16 less 10% markup of $172.62: $1,553.54.

b) Balance of parts: $2,199.07 less 20% markup of $439.81: $1,759.26.

c) Labor: $2,238.47.

4. Reasonable cost to repair trailer:

a) Parts: $47,982.83 less 20% markup of $1,596.57: $6,386.26.

b) Labor: $4,513.32.

The above findings on labor costs are based on Plaintiff's Exhibits 18 and 19 which must be viewed together and which give some indication as to what the Defendant considered reasonable for labor for repairs. As there is no testimony in the record, either by deposition or in Court testimony, as to profit margin on labor, the Court is forced to rely on Defendant's calculations as the Court finds it would be unreasonable to infer that labor cost for Plaintiff's employer would be as high as labor charges by third parties making estimates.

Plaintiff having failed to establish any taxes paid for repairs is denied any recovery for same."

The trial court's determination of reasonable costs of repair came from plaintiff's witnesses, who included Charles White, a shop foreman and body shop repairman for Ozark Truck Sales in Springdale, Arkansas; Truman Murphy, a service manager for J.M.C. Truck and Trailers in Tontitown, Arkansas; and plaintiff's own body shop manager. Defendants apparently contend that Charles White and Truman Murphy were not qualified to testify on this issue because the repairs were done in house. Defendants cite no case law by which we are bound holding that one knowledgeable in such repairs is not qualified to testify if the repairs are done in house. Our own search has discovered no such precedent. Instead, after reviewing the record, we find that this testimony was relevant and that the trial court properly considered it along with both plaintiff's and defendants' calculations. Plaintiff clearly suffered losses due to this accident. We do not believe the trial court's award for repair costs put plaintiff in a better position than if the accident had not occurred. We find the award to be reasonable and supported by the evidence.

Because of our decision that the trial court did not err in finding that plaintiff was not a proximate cause of this accident, we need not address defendants' final issue concerning defendants' cargo loss claim.

Exercising the power granted to us by Supreme Court Rule 366(a)(5) (134 Ill. 2d R. 366(a)(5)), we hereby modify the judgment of the circuit court of Effingham County by reducing the damages awarded to plaintiff by $301.02. The judgment is hereby modified to award plaintiff damages in the amount of $21,450.60.

For the foregoing reasons, the judgment of the circuit court of Effingham County is hereby affirmed as modified.

Affirmed as modified.

RARICK, P.J., and WELCH, J., concur.